IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KARANVEER SINGH,<br><br>               Plaintiff,<br><br>   v.<br><br>TOMMY GUN, INC. d/b/a "Targetmaster,"<br><br>               Defendant. | CIVIL ACTION<br><br>JURY TRIAL DEMANDED<br><br>DOCKET NO. _____ |

**COMPLAINT FOR DECLARATORY, INJUNCTIVE,
AND COMPENSATORY RELIEF**

Karanveer Singh, by and through his attorneys, Hogan Lovells US LLP and The Sikh Coalition, for his Complaint against Tommy Gun, Inc. d/b/a "Targetmaster," alleges as follows:

**PRELIMINARY STATEMENT**

1. Plaintiff, Karanveer Singh ("Mr. Singh"), brings this action against Tommy Gun, Inc. d/b/a "Targetmaster" ("Defendant"). Mr. Singh alleges unlawful discrimination based on national origin, race, and/or religion in violation of 42 U.S.C. § 1981, *et seq.* ("Section 1981") and Title II of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000a, *et seq.* ("Title II").

2. Mr. Singh seeks injunctive relief. He requests that this Court permanently restrain the violations alleged herein. Mr. Singh also seeks compensatory and punitive damages and any other relief available under federal law.

## JURISDICTION

3. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, in that this is a civil action arising under Section 1981 and Title II.

## VENUE

4. Venue is proper in this district under 28 U.S.C. § 1391(b)(2), in that a substantial part of the events or omissions giving rise to the claim occurred in this district.

## PARTIES

5. Mr. Singh is an individual who resides in Newtown Square, Pennsylvania. Mr. Singh is a citizen of Pennsylvania.

6. Upon information and belief, Defendant is a corporation incorporated in Pennsylvania and has its principal place of business in Chadds Ford, Pennsylvania. Defendant operates a gun shop and shooting range located at 255 Wilmington West Chester Pike, Chadds Ford, Pennsylvania 19317 (the "Gun Shop and Range").

## FACTS

7. Mr. Singh is a South Asian Sikh-American man who adheres to Sikhism, the world's fifth largest religion.

8. Mr. Singh wears a head covering, called a *dastaar*, to cover and protect his unshorn hair, as an essential part of his religious practice.

9. Mr. Singh has a sincerely held religious belief that requires him to wear a *dastaar* in accordance with the tenets of the Sikh faith.

10. Observant Sikhs wear five articles of faith to unify and bind them to the beliefs of the religion and to remind them of their commitment to Sikh teachings at all times. In Sikhism,

one of the five articles of faith, called *Kesh*, is that Sikhs must leave their hair unshorn and covered. All initiated Sikhs are required to cover their unshorn, uncut hair.

11. It is contrary to basic requirements of Sikhism to remove one's *dastaar* in public, or to adorn or cover the *dastaar* with any other article of clothing or other material. The *dastaar* must be worn and visible at all times.

12. On July 26, 2021, Mr. Singh visited Defendant's Gun Shop and Range for the purpose of conducting business there.

13. Upon entering the store, Mr. Singh began walking toward the shop counter. A clerk or other employee of Defendant ("Defendant's Employee") approached Mr. Singh and told him to take his *dastaar* off his head, referring to the *dastaar* as "that thing." At no time during his visit did Mr. Singh attempt to use or visit the gun range portion of Defendant's Gun Shop and Range.

14. Defendant's Employee then told Mr. Singh that people who wear "things like that" are not "welcome" in the store.

15. Defendant's Employee informed Mr. Singh that he was required to follow the store's "dress code policy" which prohibits all types of headwear in the store, with the exception of forward-facing baseball caps.

16. Attached as Exhibit A hereto is a true and correct copy of a page from Defendant's website, titled "Dress Code & Cell Phone Policies!", at https://www.targetmaster.com/pages/dress-code (last accessed July 25, 2023), which states in part: "Hats, caps, bandanas or other head covering will be removed while in the building, *except baseball caps facing forward*" (italics in original).

17. Defendant's Employee informed Mr. Singh that the Gun Shop and Range's "dress code policy" is enforced "regardless of race." He stated that the policy would apply equally to "black men wearing durags, or white men wearing biker helmets."

18. Mr. Singh explained to Defendant's Employee that, unlike a durag or biker helmet, his *dastaar* is an article of faith, and that he is required to wear it at all times, in accordance with his faith. As an observant Sikh, he can neither remove his *dastaar* nor cover it with another object.

19. Defendant's Employee stated he understood that Mr. Singh is Sikh as his wife is Indian.

20. Defendant's Employee nevertheless refused to allow Mr. Singh to wear his *dastaar* in the Gun Shop and Range.

21. Defendant's Employee never provided any explanation for why the dress code policy exists, or why it has an exception for forward-facing baseball caps.

22. Instead, Defendant's Employee informed Mr. Singh that, if he wanted to remain in the Gun Shop and Range, he must either remove his *dastaar*, or place a baseball cap over it.

23. Mr. Singh informed Defendant's Employee that he could not comply with either of these options due to his religious beliefs.

24. As a result of his refusal to abandon his faith, Mr. Singh was forced to leave the Gun Shop and Range and was unable to shop for goods he was seeking to purchase or engage in any other business there.

25. Defendant's refusal to serve Mr. Singh due to his religious beliefs was deeply upsetting and offensive to Mr. Singh.

26. While returning home from the Gun Store and Range on the same day, Mr. Singh called Defendant and asked to speak with the manager of the Gun Store and Range ("Defendant's Manager").

27. Mr. Singh asked Defendant's Manager whether a customer wearing a religious head covering would be denied service for that reason.

28. Defendant's Manager responded in an aggressive manner, asserting that Mr. Singh's head covering was "not religious."

29. Defendant's Manager then asked Mr. Singh what the Gun Store and Range was supposed to do if a "monk walked in with a 20-foot sword," and claimed to be carrying it for religious reasons.

30. Mr. Singh informed Defendant's Manager that his *dastaar* is a religious article of faith.

31. In response, Defendant's Manager informed Mr. Singh that Defendant has had this "dress code policy" in place for 26 years, and that Defendant "does not keep up with different religions."

32. Defendant's Manager also told Mr. Singh that he was "not special," and that he could place a baseball cap over his head covering and be "equal."

33. Mr. Singh later called Defendant a second time and spoke with a clerk or other employee of Defendant ("Defendant's Second Employee").

34. Mr. Singh asked Defendant's Second Employee whether a customer wearing a religious head covering would be denied service for that reason.

35. Defendant's Second Employee confirmed that a head covering other than a forward-facing baseball cap would be prohibited under Defendant's "dress code policy."

36. Mr. Singh explained to Defendant's Second Employee that his *dastaar* is an article of faith, and that he is required to wear it at all times, in accordance with his faith.

37. Defendant's Second Employee stated that he understood, and analogized to his own long hair and inability to cover his hair while working due to the policy.

38. Upon information and belief, Defendant has denied other customers' access to their facility and the use of services as a matter of policy because of the customers' religious head coverings.

39. Attached hereto as Exhibit B is a true and correct copy of a Yelp review (last accessed on July 25, 2023) by a user identified as "Wanda J." which states: "Staff was rude as he said twice no head coverings besides a baseball cap facing forward. I lifted my niqab (face covering) while he proceeded to say: 'You would have to take all that off, all that's optional anyway.'"

40. Attached hereto as Exhibit C is a true and correct copy of a Yelp review (last accessed on July 25, 2023 by a user identified as "Mahaa B." which states: "My daughter and son in law [sic] went here tonight and were discriminated against because my daughter is muslim [sic] and so is her husband. My daughter was told she would have to take off her hairscarf [sic]."

41. Attached hereto as Exhibit D is a true and correct copy of a Google review (last accessed on July 25, 2023) by a user identified as "simranjit singh" which states: "My brother went to PURCHASE a firearm but was REFUSED by an employee for wearing a turban. The turban did not cover the ears. There were customers in the shop with hats on that were being helped but he was refused for the soul [sic] reason of wearing a turban in the shop. We have gone there a few times before and have never had a problem for any reason. Please

feel free to teach your employees the difference between a hat and a turban. A turban CANNOT be compared to a hat." (emphasis in original).

42. Attached hereto as Exhibit E is a true and correct copy of an article appearing in the Philadelphia Inquirer, at https://www.inquirer.com/philly/columnists/jenice_armstrong/muslim-woman-upset-after-being-told-to-remove-scarf-at-gun-range-i-jenice-armstrong-20171005.html (last accessed on July 25, 2023) reporting that Defendant told a customer named Farida Boyer to remove her head covering, called a *khimar*, which she wears as part of her Muslim faith.

43. Based upon the foregoing, upon information and belief, Defendant has a regular and systematic practice of applying its "dress code policy" to deny service to individuals whose religious beliefs require them to wear head coverings.

44. There is no legitimate basis for denying Mr. Singh services and access to their facility, merely because he wears a *dastaar* as part of his sincerely-held religious belief. Notably, unlike the "20-foot sword" that Defendant's Manager used to justify Defendant's discriminatory practices, Mr. Singh's *dastaar* is made of cloth and does not create or communicate any risk or threat to anyone's physical safety, nor does it impose an undue hardship to the Gun Shop and Range. Mr. Singh has been able to do business with other gun stores and gun ranges while wearing his *dastaar*.

45. Defendant's use of its "dress code policy" to exclude Mr. Singh from the Gun Store and Range due to his refusal to remove or cover his *dastaar* is discrimination against Mr. Singh on the basis of his religion, race, color, national origin, and/or ancestry.

## CAUSES OF ACTION

### COUNT 1
### (Race Discrimination in Violation of Section 1981)

46. Plaintiff incorporates by reference the allegations of the preceding paragraphs.

47. Section 1981 prohibits race discrimination in the making and enforcing of contracts. 42 U.S.C. § 1981.

48. Mr. Singh is a member of a protected class, in that he is non-white and of Punjabi, South Asian (Indian) descent.

49. Mr. Singh's race is Punjabi/South Asian, his color is Punjabi/South Asian, and his national origin is Punjabi/South Asian/Indian.

50. Defendant knew that Mr. Singh was non-white based on its observation of him.

51. Defendant refused to provide services to Mr. Singh on the basis of his race, color, and national origin, interfering with Mr. Singh's rights to enter into contracts with its business.

52. Defendant violated Section 1981 by intentionally discriminating against Mr. Singh in a serious tangible way with respect to the terms, conditions, and/or privileges afforded to patrons.

53. Mr. Singh's race, color, and national origin characteristics were determinative or motivating factors in Defendant's conduct.

54. Defendant acted with the intent to discriminate.

55. Defendant acted with malice or reckless indifference to Mr. Singh's federally protected rights.

56. As a result of Defendant's violations of Section 1981, Mr. Singh has suffered damages including but not limited to: pain and suffering, inconvenience, mental anguish, loss of

enjoyment of life, humiliation, emotional distress, and other harm, both tangible and intangible.

## COUNT 2
### (Race and Religious Discrimination in Violation of Title II)

57. Plaintiff incorporates by reference the allegations of the preceding paragraphs.

58. Title II prohibits race and religious discrimination in any place of public accommodation. 42 U.S. Code § 2000(a).

59. Mr. Singh is a member of a protected class, in that he is non-white, of Punjabi, South Asian (Indian) descent, and adheres to Sikhism.

60. Mr. Singh's race is Punjabi/South Asian, his color is Punjabi/South Asian, his national origin is Punjabi/South Asian/Indian, and his religion is Sikhism.

61. Defendant knew that Mr. Singh was non-white and adhered to Sikhism based on its observation of him.

62. Defendant violated Title II by discriminating against Plaintiff with regard to his full and equal enjoyment of the goods and services offered by Defendant.

63. Mr. Singh's religion and race and color characteristics were determinative or motivating factors in Defendant's conduct.

64. Defendant acted with the intent to discriminate.

65. Defendant acted with malice or reckless indifference to Mr. Singh's federally protected rights.

66. As a result of Defendant's violations of Title II, Mr. Singh has suffered damages including but not limited to: pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, and other harm, both tangible and intangible.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands a **TRIAL BY JURY** and that the following relief be granted:

a. That this Court declare that the acts and practices complained of herein to be in violation of Section 1981 and Title II;

b. That this Court enjoin and permanently restrain the violations alleged herein;

c. That this Court award Mr. Singh compensatory damages in an amount to be determined by the trier of fact;

d. That this Court award Mr. Singh punitive damages against Defendant;

e. That this Court award Mr. Singh reasonable costs and attorneys' fees; and

f. That this Court grant such other and further relief as this Court may deem proper.

Respectfully submitted,

**HOGAN LOVELLS US LLP**

/s/ David Newmann

David Newmann (PA ID 82401)
Jasmeet K. Ahuja (PA ID 322093)
Hogan Lovells US LLP
1735 Market Street, 23rd Floor
Philadelphia, PA 19103
(267) 675-4600

Harsimar Dhanoa (*pro hac vice* forthcoming)
Hogan Lovells US LLP
555 Thirteenth Street, NW
Washington, DC 20004
(202) 637-5600

Amrith Kaur Aakre (*pro hac vice* forthcoming)
Marissa Rossetti (*pro hac vice* forthcoming)
The Sikh Coalition
165 Broadway Street, Office 2539

                                                New York, New York 10006
                                                (847) 786-5839

                                                *Counsel for Plaintiff Karanveer Singh*

Dated: July 25, 2023